Good morning, your honors. Good morning. So, Mr. Walton, you reserved two minutes for rebuttal. Yes, can you hear me okay? Yes. Good morning and may it please the court. My name is Gil Walton and I represent petitioner appellant Bradley Stinn. I'm here with my colleague David Shapiro. The court has read our briefs and you're familiar with the arguments, so I want to cut straight to the chase. No matter what standard of harmless error review this court applies here, whether it's the Chapman beyond a reasonable doubt standard that we propose, or the government's preferred Brecht substantial injurious effect test, the right to control errors at Stinn's trial, and in particular, the jury instruction that allowed the jury to convict based solely on the right to control theory of fraud, were not harmless. Now, I'm happy to jump straight into the court's questions. I think that's right. I think the simplest way to resolve this case is to, well, I would submit to rule in my client's favor, the simplest way to resolve this case is to say we do not need to decide what harmless error standard here applies, but Mr. Stinn satisfies either. And they're saying exactly the opposite. Well, so, for the government to prevail, I think the government has to beat all of our arguments. For us to prevail, we just have to show, even under the government's preferred standard, that the right to control errors had a sense. Wasn't the evidence of the financial gain to Mr. Stinn pretty solid here? So, that would kind of overwhelm the right to control theory. I mean, the right to control theory would be, if you take away the bonuses that Stinn got, the bonus of the 352, the salary increase of the 300, and the stock options, he got some securities as well at some point, all as a result of what happened in 2002. If you take that away, and then you're just left with false statements to the shareholders, which don't advantage him in any particular way, except as he might be a shareholder, but advantage everybody, but affect everybody else, then I can see right to control having a bearing on this. So, there was a considerable amount of monetary gain to Mr. Stinn as a result of what happened. So, Judge Walker, you could assume that there was all of the monetary gain that the government says there was under the traditional fraud theory, and we would still prevail, and if I could make a few reasons why. First, the government has already conceded, in opposition to our 2255 brief before this court, back in 2013, that there was also overwhelming evidence of right to control fraud. Now, the government walks that back in this appeal by saying that it presented a unified narrative of right to control fraud and traditional fraud, but I think that gives away the gain, because it concedes that the right to control theory was at least as prominent as the traditional fraud theory. I don't understand that argument. If both were overwhelming, simply because the right to control they thought was overwhelming as well, doesn't mean that the jury would not have arrived at the same verdict if there's no right to control theory at all. If there's overwhelming evidence, going back to Judge Walker's point, you would agree that if there's an increase in either the salary or there's a bonus that's tied to metrics that were met through fraud, that's a classic traditional theory of wire fraud, right? So, I would concede that if that was true, that would be a traditional wire fraud theory. We explain in our brief why we don't think that's exactly right under Yates. There was, they put in the memo that showed how the bonus was key to the metrics. Suglia testified that absent the, this is the question, absent the manipulation that you told us about earlier today, what bonus would you and Mr. Stinn have received under this computation? Answer, nothing. So, this is what the jury heard, that they cooked the bucks through all these various ways to meet these metrics, and the result of that, he got $352,000 that he would not have otherwise gotten. That's property of the company. The government argued that extensively. They gave, I don't know, over a half dozen sites to their closing and their rebuttal where they kept saying, he stole money, he stole money. So, why would we think that the jury would have ignored all that? So, you can spot the government all of that, and we still prevail, and it's for the reason the government conceded in Simonelli in both its merits briefs and oral argument, and it is that this court's right to control precedent improperly conflated elements of the federal fraud statutes. And in particular, this was that issue extensively in Simonelli oral argument, this court's precedent conflated the property, deception, and materiality elements all into one, such that once Stinn made the deceptive omission, that was the game for right to control. But just the fact that right to control is no longer appropriate doesn't mean that what was left wouldn't have resulted in a conviction. That is not the test under Brecht. Even under the government's preferred theory, the test under Brecht is not whether there is sufficient evidence to convict. This is Justice Stevens' concurrence in Brecht and Justice Rutledge's majority in Kotiakos, both of which say the question is not whether there was sufficient evidence to convict Stinn, but rather whether with the error, did that have a substantial and injurious effect. I'm not talking about sufficient in the sense of whether or not a case could be put to a jury. I'm talking about overwhelming evidence that would have necessarily resulted in a conviction. Well, so again, I don't think that's a question under Brecht and Kotiakos. And if I could explain a way to think about it. Why not? Well, Brecht and Kotiakos make clear, and this court's decision in Johnson as well. If you're tainted by a theory that no longer is applied, but there's absolutely overwhelming evidence of a theory that's OK, there has to be a new trial? Yeah, I think that is the test under Brecht and Kotiakos. And I don't think this court has any precedent directly on point saying that the error had to be outcome determinative. But I know with Sixth Circuit cases saying that to satisfy Brecht, the error does not have to be outcome determinative. And if I could offer a way to think about this. After the case was over and the jury was sent to deliberate, the jury would have gotten in the room. And in order to convict Sten of traditional fraud, it necessarily would have had to determine first that he committed right-to-control fraud. And that's for the exact reason I was articulating. The right-to-control theory in this court's precedent improperly conflated the elements of settled fraud. I don't understand that. I don't either. I don't think so. I think if you cook the books in all these various ways to meet certain metrics, and you obtain a bonus because of that, it's game over under traditional fraud. Game over. Again, I'm spotting the government that. What I'm saying is even if you assume that, the right-to-control theory, because it improperly – and this is the government's concession and seminally oral argument and in its marriage briefs – the right-to-control theory had less to prove. The government's burden was lower. I guess the forfeiture verdict clearly says he's got to give up the bonus and the pay raise and the tax gross-up that he used to his own benefit. I mean doesn't that support the conclusion that they found the traditional fraud theory? No, I'm glad you asked about that. I think there are two reasons why it doesn't. And then if I could take a moment – see, my time is almost up. Go ahead. Then if I could take a moment to point out the irony of the argument. Two reasons it doesn't work. One, the forfeiture statutes, as this court recognized in Torres, are written capaciously enough to capture property both obtained directly and indirectly from the alleged fraud. And so what Torres said is the forfeited property does not need to be the property obtained for purposes of the conviction. Second problem for the government is the burden of proof. That guilt burden is beyond a reasonable doubt. I want to go back to the first one though. So the jury found through that forfeiture verdict that he indirectly got those criminal proceeds through the right to control but did not get them directly by the fraud with the metric. How would they have done that? I think this is the same problem with the right to control theory. Once the government proved up the deception, which it necessarily would have had to prove for either theory, the game was over for right to control because it also necessarily proved up the property deprivation and the materiality. With Judge Sullivan's permission, I wanted to ask one question about the standard. I'm having a hard time understanding. If in Ferguson we applied Brecht under direct review, how could we say we're not going to apply Brecht on the most collateral type of review you can have, which is quorum novus? I'm having a hard time understanding. And the government points out we've said numerous times in Section 2255 cases for Yates claims that we're applying Brecht. So how could that be? If I could push back a little bit on this. Judge Walker, I'm going to refer to your Stone opinion. But I think there are three reasons we know that Chapman should apply here. And I'll start by saying I think this Court's precedent is a little muddled on this point. Judge Walker, you know your Stone opinion better than anybody. Do I? Well, you know it better than me. But I'll submit that there are two textual clues in Stone and also in Kalotti and Gomez, which rely on Stone, to suggest that it's actually applying a Chapman-type standard and not a Brecht standard. First, it invokes the beyond a reasonable doubt standard. That is not Brecht. That is Chapman. Second, it invokes— That argument, I saw that in your brief. Any time you're reviewing what a jury has done, you always refer to beyond a reasonable doubt because that's the standard you have to find that they met. But harmless beyond a reasonable doubt is what Chapman says. And none of those cases, Stone, Kalotti, they all used beyond a reasonable doubt just in the context of saying what they believe the jury would have found under Brecht and twisting that completely. So I think that goes to my second point, is it also invokes the properly instructed jury framework. Brecht and Kotiakos expressly forbid that analysis. Brecht and Kotiakos say the question is not what the jury would have done in the absence of the error, that is, if it was properly instructed, but rather what it did with the error, whether it was substantially and injuriously affected by the error. I'm happy to answer further questions, but I see my light is on. All right. Well, you have two minutes for rebuttal. We'll now hear from Mr. Zipana. Thank you, government. Good morning, Judge Sullivan. May it please the court. My name is Victor Zipana. I'm an assistant U.S. attorney in the Eastern District of New York, and I represent the United States on this appeal. Judge Chen did not abuse her discretion in denying carminobus here because this is a classic fraud case where a CEO was lying to investors about corporate earnings and made money off the lies. Judge Walker, Your Honor, had pointed in your questioning correctly to the evidence of the compensation that was earned. And Judge Bianco, you also correctly, Your Honor, I submit, point to the absence of manipulations testimony from cooperating witness Victor Sublia. It is clear, I submit, that the narrative theory would be the same no matter what, that he made money, that Mr. Zipana made money, and this scheme to defraud investors contemplated him making money because the earnings figures directly resulted in his bonus, his $352,000 bonus. I'm trying to remember now. Wasn't there at some point, there was going to be a transaction of some sort. And he said, let's delay it until the bonuses are decided. Yes, Your Honor. The tariff point raised by Mr. Sin, I submit, is a distraction for this reason. It confuses the question of where the bonus is coming from for why the bonus is received. And if the bonus is coming from the excess tariff payment, that's fine, but that doesn't change the fact that the reason Mr. Sin is receiving the bonus at all is because of the earnings performance. It's just a source of money. Correct, Your Honor. Your Honors, I would like to turn briefly to the matter of the Brecht standard, which we submit is the correct standard, although we also submit, Your Honors, don't have to decide it today. But we submit that we should read Judge Walker's opinion in stone at page 829, where, Your Honor, Judge Walker, in fact, quoted the Brecht standard, said it was substantial in jury's effect, cited Cipollino twice. And so we think that should be the standard here because, certainly, if it is the standard of 2255, it should be in the standard quorum nobis. And, certainly, if it's the standard on direct review, it should also be the standard in quorum nobis. We think under the Brecht standard or in the Chapman— In fact, the Supreme Court in Skilling in footnote 46 said that Brecht applies on direct review to these types of situations. Yes, Your Honor. We completely agree. We also think, Your Honor, Judge Bianco used the right formulation in your question of what the jury would have done in this circumstance if it were properly instructed. Again, it's always hard to do a prejudice analysis, but at the end of the day, one has to disregard the theoretical risk of the Yates error having an effect. We can see there was a Yates error. That is beyond dispute. Going into the prejudice analysis, one has to understand, based on the facts on the ground, based on the facts of this case, whether a properly instructed jury would have done, would have committed— It has to do with Johnson, which suggested recently that that's not the right formulation. Your Honor, we submit that in Stone, the would-have formulation was used. In Judge Sullivan's opinion in Attila, which is cited, it was would-have. In Eldridge, which Judge Sullivan joined, all used would-have. We've cited a number of precedents prior to Johnson, and we submit properly articulated analysis that needs to be done under this Yates prejudice analysis, which, again, it's a tough analysis. The government welcomes the burden, but we submit that it was clearly met here, that a properly instructed jury would have convicted on a traditional wire fraud or a securities fraud theory. And you can see, I think you just said this, the government has the burden on that, right? Your Honor, I'll take a step back. I'll take a step back. We welcome that the standard is – can be still tough at times. Your Honors have, in the past, reversed denials. It's always a case-by-case scenario. We submit that the petitioner bears the burden under Brett. Johnson says, cited in the Supreme Court case O'Neill, that the government bears the burden. Is that wrong? Your Honor, we submit that under Brown v. Davenport, it says pretty clearly that the petitioner bears the burden. And, Your Honor, we also submit that a few days later in the Hernandez case, Second Circuit, also made clear it's the petitioner's burden. And we understand – we've looked at many Brett's formulations over the years, and it does seem to say the petitioner's burden, which is consistent with what Rutigliano says, the classic Coram Novus decision, that it's – the heavy burden is placed on the petitioner at the Coram Novus stage. And if Your Honors have no further questions, we submit that for all the reasons set forth in the government's brief, this Court should affirm. Thank you, Mr. Zipan. Mr. Gual, you have a few minutes for rebuttal. So a couple of quick points. My friend started by saying that Judge Chin did not abuse her discretion. I actually don't think there's any real argument that she applied the wrong standard. Now, the question here, of course, for the Court is which standard applies. But she applied a standard articulated in this Court's decision in Tuzman that was reviewing for plain error or sufficiency of the evidence. That was not the correct standard. My friend also made the point that in applying Brecht, this Court should ask what a properly instructed jury would have done. That is not the correct Brecht analysis. Justice Stevens's concurrence goes at some length on why the question is not – and I'm reading here. The habeas court cannot ask only whether it thinks the petitioner would have been convicted even if the constitutional error had not taken place. Kotiakos is full of warnings to avoid that result. This is Brecht at 642. So the question here is, once presented with the right to control theory, what did the jury do with it? And I submit that the easiest way for the jury to convict, for the same reason Judge Calabrese in the unanimous panel in Johnson said, the easiest way for the jury to convict was the right to control theory because it improperly conflated various elements of the federal fraud statutes. Once the jury got in the room, the easiest way for them to find Sten unanimously guilty on a general verdict would have been to convict him on the right to control theory, and their day would have been done. They would have not needed to determine whether he was also guilty of a theory that required more proof, that is, the materiality and property deprivation elements under the traditional fraud theory. The simplest way for the jury to convict was the right to control theory, and as a result, it must have had a substantial and injurious effect under Brecht. Of course, we don't know. I mean, it seems to me pretty simple, pretty easy to prove either theory here. I mean, given the numbers that were involved and bonuses and salary increase, I mean, yes, you'd have to put in evidence of that, but that was part of the case anyway. Well, I just don't think you could have ratcheted down the burden for the government any lower than the right to control theory because once it proves Sten's deception, that was the whole game. The deception was also the property, and the right to control theory necessarily assumed that the omitted information was material because it was economically valuable information. So all the jury had to determine essentially for the right to control theory was the deception. Once they proved the deception, then it was also proven that he got the bonus that he shouldn't have got as well. Well, it may be that the jury could have done that, but it's not a question of whether the jury could have done that, but whether the right to control theory under Johnson was the easier way for the jury to go. It's kind of interesting. The charge, the instruction, had a reverse order. It didn't start with the right to control theory. The right to control theory came after the traditional fraud aspect of it. I mean, maybe we could read— So there's a little argument either way. Maybe we could read tea leaves like that, but again, the government in its opposition brief to Sten's— Well, you're not even reading tea leaves. You're just imagining it. Well, this is a problem of the government's own making. We asked for a special verdict for it that would have required the jury to identify the property that it was relying on. I looked at that very carefully. What you asked for was an instruction that they be unanimous as to what theory. That was what happened at the charge. The special verdict request was simply for the elements. There was never—we want a special verdict as to whether it's under right to control or traditional fraud. I think that may have been the way it was articulated in the letter brief that was submitted. No, at the conference, at the charge conference, Judge, we want—we're talking about the instruction part with regard to these two options. We want the jury to be instructed that they have to be unanimous about which one they choose. That was what you cited, and that's what I read. I didn't see any site, and I look back at your letter to the court, where we want an interrogatory, a special verdict form on whether it's right to control or traditional obtaining property. So, you know, it wasn't a specific request. It's my point. Okay. I recall that in the trial transcript, the discussion with the court was we want—there was some question about, well, which theory of property is the government relying upon? Because I think Mr. Shapiro was actually arguing at this point. He said it's not clear whether they're relying on a theory of Freedman's properties or some investor's property, and the government responded. And the request was we want an instruction that they have to be unanimous because it's not clear what they're relying on. But that's different than what the verdict sheet would say. You can instruct the jury to be unanimous without asking a question on the verdict sheet, is my point. That may be—I don't think it ultimately is dispositive here. My point was only that, you know, whether or not—the fact that we do not know what the jury relied upon does not cut against us here. You know, this is O'Neill, Justice Breyer, saying, look, ultimately, any tie goes to the petitioner under the Brex standard. But, I mean, you seem to be suggesting, then, that this is always going to be just a bright line, that this is going to be— as long as there is an alternative theory that is later deemed to be not an appropriate theory, that you've got to get a new trial. So I expected this question. I think that would be—that is the case where the government has argued that there is overwhelming evidence of both, as they have here. But I think the government sides held in its brief, which is a good example of the primary theory of trial was the traditional fraud theory. And the right to control theory was just kind of a bit part of, like, a backstop. And there the court said, look, it's so clear that the traditional fraud theory was the prominent theory at trial. But here we have the opposite. The government has conceded that the right to control theory was at least as prominent as the traditional fraud theory by making this unified narrative. I guess—but I guess—I mean, it seems to me what you're saying is that maybe the jury got into the jury room, resolved right to control, and just stopped. But I'm trying to figure out how a jury that could have convicted on the right to control would not have also convicted on the traditional fraud theory. And I guess that's where I'm asking you to explain to me. How would a jury have said, oh, no, with traditional fraud, the evidence wasn't enough for that? Because it seems to me that it's the same evidence for both. Well, I think under Brecht, the question is the practical effect of the erroneous theory. And so here, once the jury got in the room—and they deliberated for a long time. Once the jury got in the room, once they concluded he was guilty of any theory, their job was done. And I just—I haven't sat on a jury, but I don't think a rational jury would have sat there and then continued to deliberate as to whether he was also guilty of another theory. Well, I'm not sure about that, especially when the instruction on the traditional was first and there was a forfeiture still, right? Well, they received instruction, I think, immediately after that. Well, and the forfeiture was after, of course, the verdict. So they came back for an additional portion after they delivered the verdict. So I don't think they were thinking about that yet. But there was an instruction right after the right-to-control instruction that said, you just have to be unanimous on one of these theories. And so once they reached unanimity on the right-to-control theory, that was the Occam's razor. That was the easiest way to convict Sten, and then their job was done. I don't think they would have hung around for additional time for another lunch here in order to deliberate more on whether he was also guilty of the traditional fraud theory. All right. All right. Well, we reserve the decision. Thank you both. Thank you.